Dawson and Norwood, *vs.* Lambert and McKenzie.—1849.

FREDERICK DAWSON, AND LAMBERT S. NORWOOD, *vs.* BENJAMIN H. LAMBERT, AND LEWIS MCKENZIE.—*December,* 1849.

Where there is no evidence adduced in the cause, upon which the instruction asked for, could be based, the court are clearly right in rejecting such instruction.

Where a draft was taken and held by the plaintiffs, as collateral security for their claim on which they brought suit, they are under no obligation to surrender or cancel it. They have the unquestionable right to retain it until their debt is discharged.

Appeal from *Baltimore* county court.

This was an action of *assumpsit,* instituted by the appellees

against the appellants, on the 30th of September, 1846, to recover the amount due on the following account, filed with the declaration :

*Messrs. Dawson and Norwood, in account with Lambert and McKenzie.*

1846.

June 16.—To invoice 775 bbls. flour, pr. *Victory.*

|  |  |
|---|---|
| Cash, June 13, - - - - | $2,941 62 |
| " 22.—Short charge on invoice of June 16, of 2 cp. bbls., on 409 bbls., . - - | 8 18 |
| " 29.—Invoice 675 bbls. flour, pr. *Frank.* | |
| Cash, June 23rd, - - - | 2,552 25 |

| | | |
|---|---|---|
| Interest, $2,941.62, June 13, to July 4, 21 days, - - - | $10 29 | |
| Interest, $2,552.25, June 23, to July 4, 11 days, - - - | 4 68 | |
| | | 14 97 |
| | | $5,517 02 |

$C$R.

June 16.—Our draft on *Talbot, Jones &*

| | | |
|---|---|---|
| *Co.,* at 90 days, from 13 June, due Sept. 11-14, | $3,000 00 | |
| Less 90 days, discount, - | 45 00 | |
| | $2,955 00 | |
| Interest, from 16 June, to 4 July, 18 ds., - - - - | 8 86 | |
| June 27.—Our draft, 1 d. s., favor ourselves, - - - - | 2,553 16 | |
| | | $5,517 02 |

| | | |
|---|---|---|
| Sept. 14.—To amount of above draft, unpaid, - - - - - | $3,000 00 |
| To protest, - - - - - | 2 00 |
| | $3,002 00 |

LAMBERT AND McKENZIE.

The declaration contains the money counts, the general *indebitatus assumpsit* counts, including a count for sundry matters properly chargeable in account, and a count upon an account stated. The plea was *non assumpsit*, upon which issue was joined.

At the trial, the plaintiffs proved, by their clerk, that early in June, 1846, *Norwood*, one of the defendants, applied to plaintiffs to purchase flour on commission for defendants, and brought a letter of credit from *Talbot, Jones & Co.*, to draw on them for a sum not exceeding $10,000; and that on the 13th June, plaintiffs bought seven hundred and seventy-five barrels of flour, and on the same day drew the following draft on said *Talbot, Jones & Co.*—

$3,000.          *Alexandria, D. C.,* June 13, 1846.

Ninety days after date, pay to the order of *John Hoof, Esq.*, cashier, three thousand dollars, value received, and charge the same to account of *L. S. Norwood, Esq.*

LAMBERT AND MCKENZIE.

To MESSRS. TALBOT, JONES & Co., *Baltimore.*

Endorsed—"Pay to the order of *C. C. Jameison, Esq.*, cashier.          JOHN HOOF, Cash'r."

On the face of this draft was written :

"Accepted,—TALBOT, JONES & Co."

Witness further proved, that on the 29th June, 1846, plaintiffs purchased, for defendants, six hundred and seventy-five barrels of flour, and on the same day wrote them a letter, in which they say:

"We now hand account current of our transaction up to 4th prox., balance due $2,553.16, for which we value on you this day, at one day's sight, in our own favor."

The account current, referred to, is the same as that filed with the declaration, except the last item.

The following is the draft referred to in said letter:

"$2,553.16.          *Alexandria, D. C.,* June 29, 1846.

At one day's sight, pay to the order of ourselves, two thou-

sand five hundred and fifty-three dollars and sixteen cents, value received, and charge the same to account of

Your ob't servant,

LAMBERT AND McKENZIE."

MESSRS. DAWSON AND NORWOOD, *Baltimore.*

Endorsed—"LAMBERT AND McKENZIE."

That this draft was accepted and paid by defendants, at maturity.

The plaintiffs also offered in evidence a series of letters. The 1st, dated *Baltimore,* June 4th, is from *Hancock and Mann,* introducing *Mr. Norwood* to the plaintiffs. The 2nd, dated *Baltimore,* 11th of June, 1846, from defendants to plaintiffs, requests the latter to purchase and ship, for them, from 2 to 3,000 barrels of flour. 3rd, plaintiffs' letter to defendants, dated *Alexandria,* June 16th, 1846, informs the latter "that we have put on board of the schooner '*Victory*' seven hundred and seventy-five barrels sup. flour, which vessel sails to-day," and gives notice of the drawing of the draft on *Talbot, Jones & Co.,* on the 13th inst. The 4th, dated *Baltimore,* June 18th, 1846, from defendants, states that said shipment is satisfactory, requests plaintiffs to continue their purchases, and informs them of the acceptance of the draft of *Talbot, Jones & Co.* The 5th, from plaintiff, is dated the same day as the preceding, at *Alexandria,* and incloses invoice of said seven hundred and seventy-five barrels, and says: " Let us hear from you how far we shall go, and limits. We shall not be able to draw on *Messrs. Talbot, Jones & Co.,* at ninety days, for over $5,000, the balance must make at thirty and sixty days. The banks are unwilling to take paper at ninety days." The 6th, dated 19th of June, 1846, is from defendants, and after acknowledging receipt of invoice they say: " We should like you to go on and purchase, for us, the three thousand barrels, as desired, but would not wish the bills to be drawn at a shorter time than ninety days, and hope you may be able to arrange it on this time." The 7th, dated June 22nd, 1846, is from plaintiffs, and after noting a mistake in the previous invoice of two cents per barrel, on four hundred and nine barrels, says:

·" To day we have purchased, for you, the further quantity of six hundred barrels, now on board the canal boats.'' The 8th is from defendants, dated June 25th, 1846, and states that the the error has been noted and corrected, and that the further purchase is satisfactory. The 9th, dated June 29th, 1846, is from plaintiffs, inclosing invoice of six hundred and seventy-five barrels, and account current, before referred to, and apprizes the defendants of draft upon them at one day's sight, for balance of $2,553.16. The 10th dated June 30th, 1846, is from defendants, and states: " We are in receipt of yours of yesterday, and have to-day accepted your draft for $2,553.16, against invoice of six hundred and seventy-five barrels of flour, which you will please ship to *New York*, at as low a freight as possible.'' The 11th, dated July 10th, is from plaintiffs, and incloses bill of lading of six hundred and seventy-five barrels, " per packet schooner '*Frank*,' which sails to-day," &c. The 12th, and last, is as follows:

*Alexandria,* Sept'r 15th, 1846.

*Messrs. Dawson and Norwood, Baltimore:*

Gentlemen,—Our draft on *Messrs. Talbot, Jones & Co.*, of your city, drawn on the 13th of June last, at ninety days date, and due the 14th inst., for the sum of three thousand dollars, is returned to us, protested for non-payment, the same being for purchase of flour on your account. We hold you accountable to us for the payment of the same.

Yours,     LAMBERT AND McKENZIE.

The plaintiffs further proved, that the said draft on *T.*, *Jones & Co.*, was not paid at maturity, but was duly protested. The plaintiffs' clerk further testified, that said draft was discounted by the *Mechanics Bank of Alexandria*, and was not taken up by plaintiffs until after its maturity, but before this suit. Plaintiffs further stated that they held such draft and refused to give it up at the trial, but produced it as evidence. Plaintiffs further proved, that the draft of 13th June, 1846, was not forwarded to *Baltimore*, where *Talbot, Jones & Co.* resided, until the 20th day of June, 1846, and was not accepted until 22nd

June, 1846, and that by the course of said mail, plaintiffs could not receive the letter from defendants, dated 18th June, 1846, until the morning of the 19th June, 1846, and that plaintiffs mailed their letter, dated 18th June, 1846, on same day; and that at the time of the bargain for the purchase of the flour, nothing was said by *Norwood*, or by plaintiffs, or either of them, that the acceptances of *Talbot, Jones & Co.*, would be taken in payment of the flour, or in extinguishment of all claims against *Dawson & Norwood*.

The plaintiffs then prayed this instruction: That if the jury find that the flour in question was sold and delivered by plaintiffs to defendants, and that, according to the contract between the parties, the defendants were to be liable for said flour, then the plaintiffs are entitled to recover; notwithstanding they further find, that the plaintiffs, in pursuance of a previous understanding with defendants, drew the draft of the 13th June, 1846, on *Talbot, Jones & Co.*, and the same was accepted; provided that they find that said draft was protested for non-payment, and is now in the possession of the plaintiffs.

And the defendants prayed the following instructions:

1st. If the jury believe that plaintiffs sold and delivered the flour in question to *Dawson and Norwood*, for the draft drawn by them on *Talbot, Jones & Co.*, and that so soon as they drew the same, had it discounted at a bank in *Alexandria*, or elsewhere, and did not come into possession thereof, until after its maturity.

2nd. If the jury find that the plaintiffs sold to defendants the property sought to be recovered in this case, and received in payment thereof, the draft, aforesaid, on *Talbot, Jones & Co.*, then plaintiffs cannot recover of said *Dawson and Norwood* until it shall be delivered up, to be cancelled.

Which prayer of the plaintiffs the court (LE GRAND, J.,) granted, and rejected both of defendants prayers. Whereupon the defendant excepted, and the verdict and judgment being against him, appealed to this court.

The cause was argued before DORSEY, C. J., CHAMBERS, SPENCE, MAGRUDER, MARTIN, and FRICK, J.

GLENN, for the appellants.

The plaintiffs' prayer is defective in essential particulars: 1st. That the question whether notice to *Dawson and Norwood* of such protest was given in reasonable time, is not submitted to the jury; and 2nd. That the prayer nowhere asks the jury to find that any demand of payment was made of *Talbot, Jones & Co.*

There is no event in which defendants can be liable in a higher sense than as endorsers of this note; and if they were endorsers, the plaintiffs must prove:—1st. A demand of payment on *Talbot, Jones & Co.* on the day the draft fell due; 2nd. A notice of non-payment sent to the endorser, by a party interested, in a reasonable time after such demand made, and refusal of payment.

The only evidence of a demand is this: "That said draft was not paid at maturity." Now, this is true of every draft, though not presented at all.

2nd. It is not asked of the jury to find that *Dawson and Norwood* received notice after dishonor of the bill in any reasonable time, and beside which there is no evidence that any notice was ever sent them.

Again, it appears this draft was parted with by plaintiffs; being discounted for them, and not recovered by them till after its maturity. Now in *Glenn and Smith,* 2 *G. & J.*, 509, the chief justice says: "The acceptance of a note or bill of a third person for a pre-existing debt, is a payment if the creditor parts with it." One of the cases cited was 11 *Gill and Johnson,* 416, in which *Chief Justice Archer* says: "'The notes are not an extinguishment of a debt, and need not be produced;" but he speaks in reference to that case, which was not an action for goods sold and delivered, but an action for a deceit, in giving a party a false credit where the production of notes was of no importance to defendant whatever; and the chief justice also says, that where notes are given by the purchaser, said notes must be produced for his security.

Beside this, the evidence all shows that defendants were not to be liable for this draft or the flour. It is drawn by plaintiffs

on *Talbot, Jones & Co.*, in pursuance of a letter of credit to *Lambert S. Norwood*. The draft is drawn on *Talbot, Jones & Co.*, and they are directed to charge that amount to *Norwood* alone. If *Dawson and Norwood* are liable to plaintiffs, they are liable to *Jones* also, and thus a double responsibility arises from one transaction. The prayer is therefore defective for this reason.

In the next place, the court rejected the defendants' prayer, asking, that before plaintiffs can recover on their original contract, they shall surrender the draft which they hold. What is the result? Plaintiffs have two securities for the same debt, where certainly but one was intended to be given. If defendants had been drawers of the draft, and plaintiffs had attempted to recover under the original cause of action, they could only do so by surrendering at the trial the bill or note to be cancelled.

In *Glenn vs. Smith, page* 508, *Buchanan, C. J.*, says: "Acceptance by a creditor of debtor's note for an antecedent simple contract debt, does not extinguish the original debt if the note remains in the hands of the creditor unpaid, *and he can produce it to be cancelled*, or shew it lost. But he will not be permitted to recover on the original cause of action, unless he can shew it lost, or *produces it at the trial to be cancelled*." In 6 *Harris and Johnson*, 170, *Judge Stephens* says, "the note of a third person does not extinguish a simple contract debt, but he must produce it at the trial to be cancelled;" and he further proceeds to say, "that where the dealings shew the credit given to one alone with a knowledge of the other parties, you cannot turn round when you find you have misplaced your confidence and look to a different person for payment, whom you declined to take in the first instance."

In 2 *Gill*, 462, this court determined a receipt less strong than the one at bar *to be a payment*. 5 *Johnson*, 73, in *Tobey vs. Barber*, the court say, "taking debtor's note, or that of a third party, is not payment unless so agreed; but plaintiff must *return it* when dishonored, to recover on original consideration," putting both cases on the same footing.

*Chitty on Bills, edition of* 1842, *page* 180, in notes where

the whole of the *American* cases are collected, sums up the rule to be: "The acceptance of a negotiable note on account of a prior debt, is so far evidence of satisfaction, that no recovery can be had for such debt, without *producing the note and cancelling it;* and this applies as well to note of debtor as of third persons; and with reference to note of third persons, plaintiff must show he was guilty of no laches."

8 *Cowen,* 77, *Hughes vs. Wheller,* sanctions the same doctrine of cancelling the note to recover on the original cause of action.

The principle of all these cases is, that plaintiffs can have but one string to their bow: they cannot hold *Jones,* and thus diminish *Dawson* and *Norwood's* estate, and hold them also. This note is or is not a payment, at plaintiffs' option: if they say it is not, they must return it to the parties upon whom they want to fix a debt. There is no evidence to show it was received as collateral security; not a word of the kind: the letters, the accounts, show it was received in payment and not as collateral; the word or idea is not suggested in any part of the intercourse of the parties, and the court cannot intend or imagine it.

R. J. BRENT, for the appellees.

It will be observed, that the defendants' letter of 18th June, asserts falsely that the draft on *Talbot, Jones & Co.* had been duly honoured on presentation, when, in fact, it had not been sent on by the *Mechanics Bank of Alexandria,* who had discounted it. And it will be further observed, that plaintiffs' letter of 18th June, showing that the vessel with the flour had sailed, was written and mailed on that day, before they could have known that the draft on *Jones & Co.* was accepted, thus clearly evincing that they shipped this flour on the credit and liability of defendants.

It will thus appear that the accounts, as uniformly made out, charge the defendants as the *parties responsible:* that there was but one draft on *Talbot, Jones & Co.,* the next being on defendants; that the plaintiffs blended both of these shipments in one account against the defendants, who *recognised* its cor-

rectness at the time, and paid the draft on them for part of the account. That there is no distinction in the evidence between the two shipments, save in the fact, that for the first, plaintiffs drew a draft on *Talbot, Jones & Co., on account of L. S. Norwood,* as the draft shows. And finally, that there is no privity shown between plaintiffs and *Talbot, Jones & Co.* as contracting parties, until the acceptance of the draft on *22nd June,* 1846, prior to which the shipment was made, for the *letter of credit* given by *Talbot, Jones & Co.* was to *Norwood,* and could not be said to authorise any one else to draw on *Talbot, Jones, & Co.*

The substance of the transaction therefore is this, that the defendants employed plaintiffs to buy flour for their account, and to give themselves credit, showed the letter of credit held by them. That the plaintiffs, for the first shipment on account of defendants, drew the draft on *Talbot, Jones & Co. on account of Norwood,* and doubtless by his request, he undertaking to procure *Jones'* acceptance.

But this acceptance was never taken in satisfaction; and so far from evidence to establish such a defence, all the facts negative the theory.

When the flour was bought and shipped, defendants had given absolutely nothing to plaintiffs. On whose credit then could the flour have been shipped but the defendants? Could it be that plaintiffs shipped the flour on the 16th June, on the credit of *Jones,* who had then contracted no obligation with them? And who, in fact, did not accept until 22nd June.

If, therefore, it is obvious that the flour was shipped by plaintiffs on the 16th June, and sent away before they had heard, or *could have heard,* of *Jones'* acceptance, is it not conclusive to show that the shipment was on the credit of defendants? so understood and regarded always by both parties in their correspondence.

*Jones'* acceptance, when afterwards obtained, was therefore but collateral security, a *mere credit when paid,* as the account current shows.

The questions on the prayer of plaintiffs are simply these:

29    v.8

"If the jury believe that the flour was sold, and delivered by plaintiffs to defendants, (a pure question of fact,) and that according to the contract between the parties, the defendants *were to be liable for said flour,* then the plaintiffs are entitled to recover, notwithstanding" the other facts.

The whole evidence being parol, it was the province of the jury to find the contract between the parties, and the prayer is based on the assumption, simply, that *if the jury find the sale and delivery,* and that defendants were *to be liable by their contract,* then the plaintiffs must recover.

Observe that the prayer does not leave it to the jury to say, what constitutes a liability, but only if they find that by the contract, defendants were *to be liable,* meaning evidently that if *credit was given to defendants,* &c., then plaintiffs must recover upon the sale and delivery.

To whom credit was given, is a question for the jury.    See 7 *Har. & John.,* 391, *case of Elder vs. Warfield.*

And so who was intended or meant to be liable by a parol contract, is equally a question of fact.    1 *Greenleaf Ev., sec.* 277, *Note* 1.

But if it were a question of law and fact, a mixed question, this prayer only assumes, that "if the jury finds the defendants *were to be liable,*" of which liability there was abundant evidence for the consideration of the jury.    6 *G. & J.,* 63.

If right in this view, then it follows that the right to recover, was a corollary from the premises, provided the jury find the draft was protested, and was in possession of plaintiffs, unless indeed, the surrender of the draft to be cancelled was necessary, as set out in defendants' prayer, which we deny ; because, if drawn and accepted as collateral, we have a right to retain it until paid our debt, and no prejudice can result to defendants by a double recovery, inasmuch as on the trial the draft was in our possession, *overdue and dishonored.*

There must be a clear agreement to take the acceptance of a third party, as absolute payment.    *Johnson vs. Weed.* 9 *John.,* 310.    *Glenn vs. Smith,* 2 *G. & J.,* 493.    7 *Har. & John.,* 17.

To show that it is not necessary to cancel the acceptance. See *Wyman vs. Rae,* 11 *G. & J.*, 416.

The prayers of the defendant were refused rightfully, if these views are correct ; and, moreover, are so worded as to amount to one prayer, containing propositions inconsistent with each other : for instance, that if the draft was received in payment, then it must be surrendered.

MARTIN, J., delivered the opinion of this court.

After a careful examination of the facts detailed in this bill of exception, we think it clear, that there was testimony from which the jury could find that the draft of the 13th June, 1846, was drawn by the plaintiff, and held by them after its acceptance by *Talbot and Jones,* as collateral security for the payment of the flour sold and delivered by them to the defendants. And that there was no evidence adduced in the cause from which the jury could infer, that the draft in question was drawn by the plaintiffs, in full satisfaction of the claim sought to be recovered, or that they stipulated by their contract, with respect to this flour, that they would look to *Talbot and Jones* for payment, and not to the defendants, as the responsible parties.

Upon this ground, the court below was correct in granting the plaintiffs' prayer, and in rejecting the prayers of the defendants.

With respect to the law, in a case like this, there can be no controversy. The correctness of the rulings of the court below upon the points raised by the prayers, depends exclusively upon the question, whether there was testimony from which the jury could find that the draft of the 13th of June, was drawn and held by the plaintiffs, as absolute payment for the flour sold and delivered by them to the defendants? We think there was no such testimony.

The draft appears to have been duly protested for non-payment. It was subsequently taken up by the plaintiffs, and was in their possession at the trial. And assuming that it was held by them as collateral security for their claim, of which

there was certainly evidence for the jury, they were under no obligation to surrender or cancel it.    They had the unquestionable right to retain it until their debt was discharged.

JUDGMENT AFFIRMED.